(No. 99-CC-0331–

STATE FARM MUTUAL INSURANCE CO., Claimant, *v.*
THE STATE OF ILLINOIS, Respondent.

*Opinion filed March 20, 2001.*

STEVEN GERTLE AND ASSOCIATES, LTD. (ALLISON L. SLOMOVITZ, of counsel), for Claimant.

JIM RYAN, Attorney General (JILL OTTE, Assistant Attorney General, of counsel), for Respondent.

OPINION

MITCHELL, J.

This subrogation action was brought by Claimant, State Farm Mutual Insurance Company ("State Farm"), to recover for amounts that it had paid on behalf of its insured, Orval I. Porter. On July 11, 1997, State Farm's insured, Orval Porter, was travelling to the Auto Haus on Edens Expressway in his Toyota sport utility vehicle. Robert Braxton was a passenger in the car. Mr. Porter had entered the Edens Expressway at Wilson Avenue and was proceeding

northbound in the right lane of traffic. As he went under the Elston Avenue bridge, a large chunk of concrete fell from the bridge, hit the roof of his car and fell through the windshield. The piece of concrete was approximately 15 inches square and weighed 65 lbs.[1] The concrete hit Mr. Braxton in the chest, knee and ankle. Both Mr. Porter and Mr. Braxton were covered with glass from the windshield.

Mr. Porter pulled over to the side of the road and called 911. Mr. Porter did not seek treatment from the ambulance that responded, but Mr. Braxton was treated for approximately 45 minutes. The ambulance driver told them to go to the hospital and they went to Resurrection Medical Center, where they received treatment.

Immediately after the accident, the police officer investigating the accident showed Mr. Porter where the piece of concrete in question had fallen from the cross-beam on the Elston Avenue bridge. Two or three other pieces had fallen on the side. An incident report prepared by IDOT indicates that the concrete fell from the fillet on the outside beam and that there was additional loose concrete on the last beam which was later removed by IDOT.

The State does not dispute that the piece of concrete fell from the bridge or that Claimant sustained damages as a result of the incident. Rather, the State argues that it is not liable for the incident because it did not have actual or constructive notice of the condition.

While the State is not an insurer against all accidents which may occur by reason of the condition of its highways (*Scroggins v. State* (1991), 43 Ill. Ct. Cl. 225, 226), it has a duty to maintain highways in "reasonably safe condition" by using reasonable diligence in such maintenance. (*Wing v. State* (1977), Ill. Ct. Cl. 473, 476.) To recover on a negligent

---

[1] Mr. Porter testified that after the accident, he took the piece of concrete home and weighed it.

highway maintenance claim, a claimant must show that the State had actual or constructive notice of a defect. *Piggot v. State* (1968), 26 Ill. Ct. Cl. 262, 265-66.

Here, Claimant did not establish that the State had actual notice of concrete falling from the bridge; however, it argues that the evidence establishes that the State had constructive notice of the defective condition. Sarah Wilson, a civil engineer employed by IDOT, testified that the deck of the bridge is the concrete that sits on top of the steel beams. It also includes the underside since it is all part of the same piece of concrete. IDOT records reveal that the bridge in question was last inspected on March 3, 1997, four months prior to the incident. At the time of the March Bridge Inspection Report, the inspector gave the deck structural condition an element rating of "three," with "one" being the worse and "five" being new. A rating of "three" indicates that the deck is in fair to good condition but that it has some problems. Problems noted on the report with respect to the deck include large areas of "scaling." The report indicates that IDOT should "scale," or check for and remove loose concrete or loose material from the underside of the bridge deck, within the year. Scaling locations were identified as "Bay 1 over lane 1," "Bay 2 over lanes 1 and 2" and "Bay 4 over lanes 2 & 3" over northbound I-94. Bays are the spaces between the beams on the underside of the bridge. The concrete in question fell from Bay 1 over lane 3.

Constructive notice is imputed to the State where a condition which by its evident nature, duration, and potential for harm should necessarily have come to the attention of the State, so that the State should have made repairs. (*Scroggins*, at 227-28.) Whether the State had constructive notice of a condition depends on the facts of each case. *Stills v. State* (1989), 41 Ill. Ct. Cl. 60, 62.

Respondent argues that it did not have constructive notice of the condition because "bay 1 over lane 3" was not

specifically identified on the bridge inspection report as a scaling location. A similar argument was made in *Robinson v. State* (1981), 35 Ill. Ct. Cl. 185. In *Robinson*, the Claimant was injured when a piece of concrete fell onto her car while she was driving under a bridge. The State argued that, although it knew that the underside of the bridge was defective and that there was concrete falling from the underside of the bridge, those parts of the bridge were unrelated to Claimant's accident and, consequently, the State did not have knowledge that the underside of the bridge in other areas was defective. This Court held that the State could be charged with knowledge of the condition because it had actual knowledge of a defective underside. *Robinson*, at 189.

In the present case, the State had notice that large areas of the underside of the bridge deck should be checked for loose concrete or loose material. Although the concrete in question did not fall from one of the bays noted on the inspection report, as noted in *Robinson*, "Respondent knew that the condition, unrepaired, would worsen. Notice of a defect of part of a bridge becomes notice of the potential defects of the rest of the bridge." (*Robinson*, at 189.) Accordingly, the Claimant has established constructive knowledge on the part of the State.

The remaining issue is that of damages. A claimant has the burden of proving his damages with certainty. (*Gildehaus v. State* (1993), Ill. Ct. Cl. 176, 185.) Claimant is seeking damages in the amount of $2,842.13. Claimant introduced the following bills into evidence: a bill in the amount of $2,311.63 for repairs to the damage to Mr. Porter's automobile; a bill from Resurrection Medical Center in the amount of $430.50 for medical treatment rendered to Mr. Porter; and a bill in the amount of $100 for medical treatment rendered to Mr. Braxton as a result of the incident. Mr. Porter testified that State Farm paid these bills, with the exception of $200

paid by Mr. Porter as his deductible. Based on the foregoing, Claimant has met its burden of proving damages. An award is made to Claimant in the amount of $2,842.13.